■ DEAN A. MARTIN, Appellant, v LOUIS J. LAVALLEY et al., Respondents. [41 NYS3d 790]—

Devine, J. Appeal from an order of the Supreme Court (Ellis, J.), entered May 26, 2015 in Clinton County, which, among other things, granted defendants' motion for summary judgment dismissing the complaint.

In January 2011, a van driven by defendant Louis J. LaValley rear-ended a vehicle driven by plaintiff in the Town of Champlain, Clinton County. Plaintiff brought this negligence action against defendants, alleging that he sustained neck and back injuries that constituted serious injuries as defined in

Insurance Law § 5102 (d) and incurred economic losses in excess of basic economic loss as a result of the accident. With regard to his contentions of serious injury, plaintiff alleged that his injuries led to a significant limitation of use of a body function or system and that he was unable to perform substantially all of his usual and customary daily activities for 90 of the first 180 days following the accident. Defendants thereafter moved for summary judgment dismissing the complaint, while plaintiff cross-moved for partial summary judgment on the issue of liability. Supreme Court granted defendants' motion and denied plaintiff's cross motion, and plaintiff now appeals.

To satisfy their initial burden of demonstrating that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 352 [2002]; *Shelley v McCutcheon*, 121 AD3d 1243, 1244 [2014]), defendants submitted the records of plaintiff's treating physicians and the affirmed report of a physician who reviewed those records and conducted an independent medical examination of plaintiff. Contrary to plaintiff's contention, although some of his medical records were uncertified, defendants could "properly rely [upon them] to make [a] prima facie showing of entitlement to judgment as a matter of law" (*Tuna v Babendererde*, 32 AD3d 574, 575 [2006]; *see Cook v Peterson*, 137 AD3d 1594, 1597 [2016]; *Womack v Wilhelm*, 96 AD3d 1308, 1309 [2012]).

The medical records reveal that plaintiff visited the emergency room in the wake of the accident and, after CT scans of his brain and cervical spine only found degenerative changes, he was diagnosed with a cervical strain and directed to stay out of work and return in a few days for follow-up. He returned three days later with continued head pain, but another CT scan of his brain was unremarkable. He was accordingly diagnosed with neck strain and headache, fitted with a cervical collar and directed to remain out of work until cleared to return by his primary care physician. Plaintiff saw his physician three days later, who diagnosed him with "cervical spine and trapezial strain and spasm[,] . . . lumber spine strain and spasm" and headaches "consistent with postconcussive syndrome," but failed to detail the basis for those findings or the extent of plaintiff's impairments. His subsequent visits in January and February 2011 noted that plaintiff did not have "significant postconcussive symptoms" and probably had a muscle strain that would be helped by physical therapy. By February 2011, his physician was reduced to noting continued tenderness and a "[s]light spasm"—without addressing what

tests, if any, were used to trigger either—and referred the matter to a physiatrist to address plaintiff's continued pain and belief that he was disabled.

The physiatrist initially suspected that plaintiff might have a cervical spine condition and kept him out of work due to his subjective complaints of pain, but authorized him to return to light-duty work in July 2011. The physiatrist acknowledged in November 2011 that he was "unable to identify the source of [plaintiff's] pain" despite extensive diagnostic testing and, by April 2012, found that plaintiff could return to full-duty work after a course of physical conditioning. Plaintiff also saw a neurologist for his headaches, who ordered an MRI of plaintiff's brain that produced no relevant findings. Plaintiff was likewise examined by an ear, nose and throat specialist who found it "impossible to" substantiate the theory that plaintiff's tinnitus had been made worse by his injuries. Defendants also submitted the affirmed report of an orthopedist who, after subjecting plaintiff to an independent medical examination and examining his medical records in 2015, opined that there was no objective evidence to show that plaintiff had sustained serious injuries in the accident that caused his subjective complaints. Further, with regard to the 90/180-day category, defendants submitted proof that plaintiff was driving soon after the accident and that he had resumed visiting his son in Ottawa, Canada "two or three month[s]" after it.

Defendants accordingly showed that plaintiff's significant limitation of use claim was based upon subjective complaints and unquantified limitations, shifting the burden to plaintiff to raise a triable issue of fact on that issue (*see Toure v Avis Rent A Car Sys.*, 98 NY2d at 353; *DeHaas v Kathan*, 100 AD3d 1057, 1059-1060 [2012]; *Peterson v Cellery*, 93 AD3d 911, 913-914 [2012]). Moreover, in the absence of objective proof that plaintiff was prevented "from performing substantially all of [his] usual and customary daily activities for 90 of the first 180 days following the accident," the burden shifted to plaintiff on that issue as well (*Dongelewic v Marcus*, 6 AD3d 943, 944 [2004]; *see Womack v Wilhelm*, 96 AD3d at 1310).

In opposition, plaintiff primarily relied upon an affirmation from a neurologist and the uncertified records of a chiropractor that he had been intermittently seeing since 1988. Assuming without deciding that Supreme Court should have considered the uncertified chiropractic records, those records provide no objective medical evidence as to "plaintiff's physical limitations and restrictions in his daily activities," then or now, and do not raise a question of fact with regard to his significant limitation

of use and 90/180-day claims (*Parks v Miclette*, 41 AD3d 1107, 1110 [2007]; *see Perl v Meher*, 18 NY3d 208, 219-220 [2011]; *Raucci v Hester*, 119 AD3d 1044, 1047 [2014]). Further, the neurologist who submitted an affirmation on plaintiff's behalf dealt with plaintiff's 90/180-day claim in conclusory fashion and did not set forth "objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system," rendering that affirmation insufficient to raise a question of fact as to either of the serious injury categories at issue (*John v Engel*, 2 AD3d 1027, 1029 [2003]; *accord Davis v Cottrell*, 101 AD3d 1300, 1301 [2012]; *see Shea v Ives*, 137 AD3d 1404, 1405-1406 [2016]). Therefore, the complaint was properly dismissed insofar as it was premised upon plaintiff sustaining a serious physical injury as defined in Insurance Law § 5102 (d).

Plaintiff additionally asserted a claim for economic loss in excess of basic economic loss, which "does not require [him] to have sustained a serious injury" (*Wilson v Colosimo*, 101 AD3d 1765, 1767 [2012]; *see* Insurance Law §§ 5102 [a]; 5104; *Clark v Farmers New Century Ins. Co.*, 117 AD3d 1208, 1209 [2014], *lv dismissed and denied* 24 NY3d 991 [2014]). Defendants did not make any argument regarding that claim in their motion for summary judgment and, as such, Supreme Court erred in granting so much of their motion as sought to dismiss it (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *cf. Rulison v Zanella*, 119 AD2d 957, 958 [1986]).

Inasmuch as that claim survives, we must consider plaintiff's cross motion for partial summary judgment on the issue of liability. Where, as here, a driver of a moving vehicle rear-ends a stopped vehicle, a prima facie case of negligence exists that must be rebutted by "an adequate, nonnegligent explanation for the collision" (*Johnson v First Student, Inc.*, 54 AD3d 492, 493 [2008]; *see Grant v Nembhard*, 94 AD3d 1397, 1399 [2012]). The accident in question occurred at the United States-Canada border while plaintiff, a customs official, was escorting LaValley, a service van driver, to a disabled vehicle in the area. LaValley was accordingly following plaintiff and, when plaintiff "stopped dead" about 100 feet ahead of merging traffic, LaValley testified that he hit the brakes but was unable to stop his vehicle in time. Viewing this evidence in the light most favorable to defendants as the nonmoving parties on plaintiff's cross motion, we find "that they have presented a sufficiently nonnegligent explanation for the collision to overcome the infer-

ence of negligence" (*Tripp v GELCO Corp.*, 260 AD2d 925, 926 [1999]; *see DeVito v Silvernail*, 239 AD2d 824, 825 [1997]).

Peters, P.J., Garry, Clark and Aarons, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment dismissing that part of the complaint seeking recovery for economic loss in excess of basic economic loss; motion denied to that extent; and, as so modified, affirmed.